## 17800.  NATIONAL FIRE INSURANCE COMPANY OF HARTFORD *v.* BENNETT.

Where the insured under a fire-insurance policy suffered a loss, and under the provisions of the policy the amount of loss was submitted to appraisers, one appointed by the insured and the other by the company, and these selected an umpire, and where, pending a consideration of the amount of the loss, the appraiser appointed by the insured withdrew ·from a consideration of the matter and the other appraiser and the umpire made an award which the insured refused to accept, and he sued. on the policy, and where upon the trial of the case the defendant offered in evidence the award, and it was objected to on the ground that the arbitrator appointed by the company was not impartial, and this was clearly shown by uncontradicted evidence, the court did not err in rejecting the award.

DECIDED MARCH 8, 1927.

Complaint on fire policy; from Cherokee superior court—Judge E.. D. Thomas presiding.  November 9, 1926.

The National Fire Insurance Company of Hartford issued a fire-insurance policy covering a dwelling and certain outhouses belonging to O. P. Bennett.  The dwelling and the smokehouse were totally destroyed by fire.  The insured promptly furnished proofs of loss, but he and the company could not agree upon a settlement. Thereupon, in conformity with the provisions of the policy, the insured and the company each appointed an appraiser, and these selected an umpire.  The appraisers failing to agree, the appraiser appointed by the insured withdrew from further consideration of the matter, and the other appraiser and the umpire made an award and fixed the loss at $1,700.  The insured, being dissatisfied with this finding, brought suit on his policy, and a verdict in his favor for $1,750 was returned.  This included $50 on the smokehouse. On the trial the defendant offered in evidence the award, and, on motion of counsel for the plaintiff, it was rejected.  The insurance company filed a motion for a new trial, which was overruled, and it excepted.

*Spalding, MacDougald & Sibley, H. G. Vandiviere,* for plaintiff in error.

*A. J. Henderson, H. C. Holbrook, Morris, Hawkins & Wallace,* contra.

BLOODWORTH, J.  (After stating the foregoing facts.)  A ground

Fire Insurance, 26 C. J. p. 419, n. 36; p. 420, n. 38; p. 426, n. 68, 71; p. 537, n. 56, 57.

of the motion for a new trial alleged that the court erred "in excluding from the jury the appraisal agreement entered into between the insured and the company, and the award made in pursuance thereof, fixing the sound value of the property and the amount of the loss and damage thereof." This award was objected to by plaintiff upon the following grounds: "The said appraisal and the award made thereunder was not binding upon the plaintiff, for that the appraiser selected by the company, to wit, R. B. Taylor, was as a matter of law disqualified to act as appraiser, for that the said R. B. Taylor had been employed by the company for a period of three weeks at ten dollars per day for the purpose of getting up evidence as to the value of said property, and by the said R. B. Taylor submitted to the adjuster for the company; the objection being in the following language, and is here inserted at plaintiff's insistence, to wit: 'We object to it. You will recall from the testimony of Mr. Taylor that he was the appraiser selected by the company in this case, and you will also recall that he testified that for three weeks before he was selected that he had been in its employ, and while he was working up here for them, getting up these statements, he was paid $10 a day for that, and was employed by the insurance company for the purpose of getting up this evidence for them, and at the time he got these statements went and submitted it to the adjuster. We say this is a flagrant violation of an arbitrator, as we understand it. The law contemplates an impartial arbitrator. Go and investigate. He swears that he took as his basis for the estimate the other papers he selected, the statements he got while he was in the employ of the insurance company, and we think it is so flagrantly fraud on its face that it would not be an arbitration in contemplation of law, and that this paper in evidence, developing that fact, that this paper should not be introduced as evidence, because it shows fraud on its face to select a man that was in their employ'." Counsel for the plaintiff in error insist that the appraiser selected by the company "was not a regular employee of the defendant company, but had been employed for the purpose of getting up evidence as to the value of the property and the extent of the loss and damage," and "was not disqualified to act as an appraiser, but movant contends that the information which the said R. B. Taylor had acquired while employed by the company for that purpose served to

qualify said Taylor as a competent appraiser." They insist also "that the appraisal agreement and the award made in accordance therewith was conclusive of the amount of loss and damage sustained by the plaintiff." Whether the rejection of the award as evidence was error is the question for this court to determine.

The law, the contract of insurance, and the oath taken by the appraisers all contemplate that an appraiser should be disinterested and impartial. The policy contains the following provision: "In the event of disagreement of the amount of loss the same shall as above provided be ascertained by two competent and *disinterested* appraisers, the insured and the company each selecting one, and the two so chosen shall first select a competent and disinterested umpire." (Italics ours.) Before entering upon the discharge of their duties the appraisers took the following oath: "We, the appraisers above named, do solemnly swear each individually and for himself, that *we have no interest as employee, relative, creditor, or otherwise in any of the parties signing the foregoing appointment,* nor are we interested in said property or insurance thereon; and that *we will act with strict impartiality in the discharge of our duties as such appraisers,* rendering an award to the best of our knowledge, skill and judgment." (Italics ours.) The record clearly shows that the appraiser Taylor, appointed by the insurance company, was neither disinterested nor impartial. It shows that for some time, probably for three or four weeks, prior to the meeting of the appraisers he was in the employ of the insurance company. In its motion for a new trial the defendant admits this. The record shows also that the company paid him $10 per day for his services. Taylor himself swore: "After they employed me as adjuster, paying me $10 a day, I came up here investigating this loss and had them name me as appraiser." The record shows also that Taylor was very active as an employee of the insurance company in obtaining estimates of the amount of damage and loss, and refused to consider any estimate of the loss except that which he had obtained, and none other was considered in making up the award. The umpire swore: "We based all our findings on the written statements that Taylor had." A contractor named Pritchard, forty-three years old, who had been engaged in that work practically all his life, furnished to the appraiser appointed by the insured an itemized statement of the material and

labor necessary to rebuild the destroyed dwelling. Taylor swore that he refused to consider that estimate, which was $4,041.52, "because it was out of reason." However, he did consider an estimate of $2,500, made for him by a contractor named Cline. It could hardly be shown more clearly than in this case that Taylor was both interested and partial.

The judge who tried the case did not err when he rejected the award as evidence, and the judge who heard the motion for a new trial properly overruled it.

*Judgment affirmed. Broyles, C. J., concurs. Luke, J., concurs specially.*

LUKE, J., concurring specially. I concur in the judgment reached by my colleagues, because the record shows that the arbitrator for the insurance company was not disinterested or impartial, as is required by law. The law and the contract of insurance under consideration require that the appraisers shall be "disinterested," and the oath taken by the appraisers provided that they were not "interested in said property or insurance thereon," and that they would "act with strict impartiality" in the discharge of their duties as appraisers. The record clearly shows that the appraiser for the insurance company was not impartial; that he had the company appoint him as appraiser; that he refused to consider any estimate of the loss except that which he himself had obtained while he was in the previous employ of the company; that he refused to consider an estimate of $4,041.52 "because it was out of reason," but did consider an estimate of $2,500, which was favorable to the insurance company. This conduct might be usual where one contemplates building a house, but it is unusual and improper for an appraiser, supposed to be impartial, seeking the truth, and trying to ascertain the cost of replacing the burnt building, to refuse to consider an estimate because it was not to the interest of the company that appointed him. For this reason the trial judge properly rejected the award as evidence.

However, since the record shows that the objection made by plaintiff to the award was in part that "R. B. Taylor was, *as a matter of law,* disqualified to act as appraiser, for that the said R. B. Taylor had been employed by the company for a period of three weeks at $10 per day for the purpose of getting up evidence as to the value of said property," I deem it necessary to say that

I am of the opinion that *former* employment by the insurance company would not disqualify Taylor to act as an appraiser, there being no employment, except as appraiser, at the time he was acting as such. A former employee could be absolutely disinterested and impartial.